UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DENNIS SAVARESE, | ) | |
| | ) | |
| Petitioner, | ) | CRIMINAL ACTION NO. 86-00251-NMG |
| v. | ) | CIVIL ACTION NO. 13-11086-NMG |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION ON
## PETITION FOR WRIT OF CORAM NOBIS

February 18, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

Petitioner, Dennis J. Savarese, has brought a Petition for Writ of Coram Nobis[1]

seeking to set aside a judgment entered pursuant to his guilty plea on January 21, 1987 to

a charge of unlawful use of an access device (*i.e.*, credit card fraud) in violation of 18

U.S.C. § 1029(a)(2).  United States v. Savarese, 86-cr-00251-C/NMG (the "1987

conviction").  Savarese contends that he was never advised during his Rule 11 colloquy

conducted by Judge Caffrey of this court that his plea agreement was not binding on the

court.  Savarese was released from prison on this conviction on November 9, 1989.

---

[1]  The Petition is listed on the Docket as a motion to vacate, set aside or correct a
sentence pursuant to 28 U.S.C. § 2255.  However, "[a] writ of coram nobis is a common-law
remedy used to correct errors of fact, and a petition for the writ brings before the court that
rendered the judgment under attack matters of fact which, if known at the time of judgment,
would have prevented its rendition."  United States v. Brimage, No. 12-11592-PBS, 2012 WL
5398471, at *2 (D. Mass. Oct. 31, 2012).

While the records indicate that Savarese was released on parole, he contends that he thought that he had been released because his conviction had been vacated as a result of a habeas petition he had filed pursuant to 28 U.S.C. § 2255.

On February 2, 2010, Savarese was convicted by a jury in this court of conspiracy, two counts of aggravated identity theft, and one count of identity theft.  United States v. Savarese, 07-cr-10320-RGS (the "2010 conviction").  He was sentenced on May 24, 2010 by Judge Stearns to 168 months imprisonment with three years of supervised release. Since his 1987 conviction had taken place more than 15 years before his conduct in the 2010 fraud case, the 1987 conviction had no impact on his Guidelines calculation.  See U.S.S.G. § 4A1.2(e)(1) ("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.").  Nevertheless, Savarese contends that the 1987 conviction, and the similarity of the charge to his most recent conviction, affected his current sentence.  By his Petition, Savarese is seeking to set aside his 1987 conviction.

After careful consideration of the relevant records and arguments, this court concludes that Savarese has not established that he is entitled to the extraordinary remedy of a writ of coram nobis.  Therefore, this court recommends to the District Judge to whom this case is assigned that the Petition (Docket No. 1) be DENIED.

## II.  <u>STATEMENT OF FACTS</u>[2]

### <u>Savarese's 1987 Guilty Plea</u>

On or about August 11, 1986, Savarese was indicted for unlawful use of an access device (credit card fraud) in violation of 18 U.S.C. § 1029(a)(2).  <u>United States v. Savarese</u>, 86-cr-00251-C/NMG.  (<u>See</u> Pet. at 2).  He pleaded guilty before Senior District Judge Caffrey on January 21, 1987.  (Pet. at 2-3; Ex. A).  According to Savarese, he agreed to plead guilty to a one year sentence to run concurrently with a state sentence he was then serving, resulting in no additional prison time.  (Pet. at 2).  No transcript of the plea colloquy is available.  (Opp. at 1).  This is the plea Savarese is presently seeking to set aside.

On April 1, 1987, Savarese was sentenced to five years imprisonment, to be served on and after the state sentence he was then serving.  (Ex. B).  He contends that he was never advised by Judge Caffrey that his plea agreement was not binding on the court. (Pet. at 3).  According to Savarese's most recent Presentence Report ("PSR"), by 1987 when he was being sentenced by Judge Caffrey, Savarese had approximately 20 different criminal convictions, stemming back to 1976 when he was 19 years old.  Most of them involved some sort of credit card fraud or identity theft.  (<u>See</u> Ex. C at pp. 10-23).  For

---

[2]  Unless otherwise indicated, the facts are undisputed and are described in the Petition for Writ of Coram Nobis (Docket No. 1) ("Pet."), the Memorandum of the United States in Opposition to the Petition (Docket No. 8) ("Opp."), and Petitioner's Response to Government's Answer (Docket No. 13) ("Resp.").  References to Exhibits are to the exhibits submitted by the government in connection with its Opposition.  (Docket Nos. 8-1, 12) ("Ex.").

example, Savarese had been convicted of receiving stolen credit cards in 1979 (¶ 44);

"falsely assume to be a police officer" in order to steal drivers' licenses in 1980 (¶ 46);

credit card misuse and larceny in 1980 (¶ 48); forgery, knowingly receiving stolen

property and attempted larceny with a stolen credit card in 1980 (¶ 51); credit card

misuse in 1982 (¶ 52); uttering a false prescription in 1982 (¶ 53); larceny by passing

worthless checks in 1983 (¶ 54); receiving stolen property, larceny, uttering false checks

and attempted larceny in 1983 (¶ 56); uttering false checks, forgery and larceny in 1983

(¶ 57); larceny by cashing stolen checks in 1984 (¶ 59); receiving stolen property over

$100 in 1985 (¶ 60); larceny, larceny by check, forgery and uttering in 1986 (¶ 63); and

larceny of property over $100 and uttering a forged instrument in 1986 (¶ 64).  He was

apparently serving a sentence for this last conviction at the time he was sentenced in

Federal Court by Judge Caffrey.  (Id.).

Savarese missed the deadline for filing a direct appeal of his 1987 conviction.  On

May 25, 1987, he filed a motion for leave to appeal late, which was denied by Judge

Caffrey on June 5, 1987.  (Pet. at 3; Ex. D).  Meanwhile, on or about May 1, 1987,

Savarese filed a "Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence

by a person in federal custody" ("habeas petition"), which was apparently assigned to

Judge Nelson.  (Ex. E, Docket No. 87-1115-N).  Therein he alleged, among other

grounds, that his federal sentence should be changed to be concurrent with his state

sentence.  (Id. at Ground three).  As factual support for this argument, he alleged as

follows:

> I feel that the prosecuter [sic] promised to recommend concurent
> [sic] sentence in order to induce my state guilty pleas.  I was
> awaiting trial on my state cases when the prosecuter [sic] offered me
> concurrent federal time, so I had to hurrily [sic] plead guilty to my
> state charges in order for me to have state time so I could receive a
> Federal concrrent [sic] sentence.

(Id.).  Savarese also asserted that his conviction had been obtained by a plea of guilty

"which was unlawfully induced."  (Id. at Ground four).  His factual support therefore was

as follows:

> The prosecuter [sic] promised to recommend such a lenient sentence
> that was not consistant [sic] with my record, just to induce my guilty
> plea should have done more than just make a formal recital of a
> proposed amount of time.  This is either an unkept promise since it
> was not a proper recommendation of a U.S. Attorney who is familiar
> with both the defendant and his record.  If it is not an unkept promise
> it is at least a clear abuse of the plea Bargaining [sic] system and
> should be subject to Withdrawal [sic] of guilty plea.

(Id.).  Savarese did not allege, as he does presently, that he was not advised that the

recommendation in his plea agreement was not binding on the court.

   While the habeas petition was pending, on or about June 8, 1987, Savarese filed a

motion to withdraw guilty plea pursuant to Fed. R. Civ. P. 32(d), along with a supporting

affidavit and memorandum.  (Exs. G, H, I).  The motion was denied by Judge Caffrey on

June 30, 1987.  (Ex. G).  In his affidavit, Savarese referred to an agreement that the

prosecutor would recommend a federal sentence of one year and a day concurrent with

his state time.  (Ex. G at ¶¶ 10, 13).  Again, he did not allege that he was not advised by

the court that the recommendation was not binding on the court.  Similarly, in his

memorandum he alleged ineffective assistance of counsel on the basis that the advice he

received concerning his eligibility for parole was erroneous.  (Ex. I at 2).  He did not allege that he did not understand that the concurrent sentence recommendation was not binding.

On or about July 2, 1987, Savarese filed a Notice of Appeal of several motions, listing the motion to withdraw guilty plea, pursuant to Fed. R. Crim. P. 32(d), which had been denied on June 30, 1987, and a motion to vacate or correct sentence imposed in an illegal manner, pursuant to Fed. R. Crim. P. 35, which had been denied on June 29, 1987. (Ex. F).  The government contends that this appeal from the "motion to vacate" was from the denial of Savarese's habeas petition by Judge Caffrey.  (Opp. at 2).  Savarese strenuously denies that his habeas petition had been denied, or that he appeared therefrom.  (See Resp. at 1-2).  Since the habeas petition was apparently assigned to Judge Nelson, and the Notice of Appeal makes no reference to a habeas petition or to 28 U.S.C. § 2255, this court will assume that Savarese is correct, and that no action was taken on his habeas petition prior to his release.[3]

On July 26, 1987, Savarese filed another motion to withdraw guilty plea pursuant to Fed. R. Crim. P. 32(d).  (Ex. J).  Therein he alleged for the first time, as he does here, that the prosecution had failed to inform the District Court of the existence and terms of the plea agreement, and that the court did not advise him, as required by Fed. R. Crim P.

_____

[3] Since this court adopts Savarese's chronology of events, it is not necessary to have an evidentiary hearing to resolve any disputes.  (See Resp. at 2).

-6-

11(e)(2),[4] that if the court did not accept the government's recommended sentence, he nevertheless would have no right to withdraw his plea.  (Id.).  That motion was denied by a margin entry, apparently by Judge Caffrey, on August 6, 1987.  (See Opp. at 3).  Thus, Judge Caffrey, who conducted the sentencing, was obviously aware of Savarese's challenge to the plea colloquy, but rejected Savarese's claim.  There is no record of any appeal of the denial of this motion.

According to Savarese, Judge Nelson ordered an evidentiary hearing on his habeas petition, and counsel was appointed.  (Pet. at 3).  Before the hearing was held, however, Savarese was released from prison on November 9, 1989.  (Id.).  According to court records, Savarese was released on parole, and his parole was supervised by the U.S. Probation Department for the District of Nevada.  (See Ex. C at pp. 23-24).  Savarese contends, however, that he was not released on parole, and that he thought that he was released because his habeas petition had been granted.  (Pet. at 3).  He further contends in his Petition that he did not learn that he had been released on parole until he saw his PSR in 2010.  (See Pet. at 5-6).

---

[4]  The requirement of previously numbered Rule 11(e)(2) that in the case of a non-binding plea agreement the court "must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request" is now found in Fed. R. Crim. P. 11(e)(3)(B).

## Savarese's 2003 Conviction

Savarese was convicted in April 2003 in the United States District Court for the Eastern District of Kentucky of unlawful use of a credit card, in violation of 18 U.S.C. § 1029.  (See Ex. C at 27).  In the PSR prepared in connection with that conviction, it was reported that Savarese had been sentenced in 1987 to five years of imprisonment, and had been paroled in 1990.  (See Ex. K at ¶ 32).  Savarese was given three points in his criminal history as a result of the 1987 conviction.  He objected, claiming that he had filed a § 2255 motion which had been granted, and that he was discharged from the sentence in November 1989 instead of 1990.  (Ex. K at p. 32 of 46).  The PSR was amended  to state that "[t]he defendant was correct that he filed a 2255 motion and that he was, in fact, released on November 9, 1989.  The report has been revised to include the proper date of discharge from the Bureau of Prisons.  However, this conviction will remain a three (3) point conviction because of the definition set forth in § 4A1.1(a).  This conviction and sentence is within the fifteen year time frame."  (Id.).  U.S.S.G. § 4A1.1(a) provides that "[t]hree points are added for each prior sentence of imprisonment exceeding one year and one month."  It also provides, however, that "a conviction that has been expunged, or an invalid conviction is not counted."  Thus, the Kentucky Probation Department apparently did not agree that Savarese's 2003 conviction had been invalidated.  Savarese did not challenge the PSR further.  He contends now that there was no reason to challenge it in 2003 because his mandatory sentence would have remained the same.  (Resp. at 3-4).

## Savarese's 2010 Conviction

On September 26, 2007, Savarese and five others were named in a 28 count indictment with conspiracy, identity theft and aggravated identity theft.  United States v. DeSimone, 07-cr-10320-RGS.  On February 2, 2010, a jury convicted him of conspiracy, two counts of aggravated identity theft and one count of identity theft, and acquitted him on one count of identity theft.  United States v. Savarese, 686 F.3d 1, 6 (1st Cir. 2012). Savarese was sentenced by Judge Stearns on May 24, 2010 to 168 months imprisonment with three years of supervised release.

In his 2010 PSR, it was reported in connection with his 1987 conviction that he had been released on parole on November 9, 1989, and that his parole terminated on July 31, 1992.  (Ex. C at ¶ 66).  Since this conviction was outside the 15 year period provided in the Guidelines, the Massachusetts Probation Office assigned no criminal history points to the 1987 conviction.  (Id. (citing U.S.S.G. § 4A1.2(e)(3) ("Any prior sentence not within the time periods specified above is not counted."))).  Savarese raised a number of objections to the PSR.  (See Ex. C at p. 29 of 37).  However, he did not object to the description of his 1987 conviction.

At Savarese's sentencing, a great amount of time was spent on the appropriate sentencing guideline, appropriate enhancements, the monetary amount in issue, and the

number of victims.[5]  There was no mention of convictions that were not counted in the

guideline calculation.

The government argued that the trial testimony was "very clear" that Savarese had

been engaged in this credit card scheme for "about 20 years."  (Sentencing Tr. at 6).

"Hundreds" of people had their credit cards stolen.  (Tr. at 7).  The government

recommended an 18 year sentence and argued as follows:

> It's a very large recommendation.  We acknowledge that.  We're not
> recommending a sentence because that's what the guideline range is.
> The guideline range is that high, and we are recommending that
> sentence because of how serious, how longstanding, and how
> deliberate Mr. Savarese's conduct was.
>
> And he is now someone who has had problems in the system before
> and just doesn't quite get it yet and maybe with, with a hard hit this
> time, he'll finally get it that his conduct is bad.  I don't think that is
> Dennis Savarese.  Dennis Savarese is someone who absolutely gets
> it.  He has been in prison for years before; and notwithstanding that,
> each time he gets out he goes back to doing what he's done for the
> past 30 years, which is, make a living supporting himself in quite a
> nice way by victimizing other people.
>
> That's what he does, and the only way to protect the public from him
> is to keep him in jail until he's too old to do this anymore.  That's
> what his record makes very clear.  That's what this conduct makes
> very clear.

(Tr. at 11-12).

Defense counsel argued that a seven year sentence was appropriate, and

challenged the guideline calculation, amount at issue and number of victims.  While

---

[5]  The Sentencing Transcript is found at Docket No. 278 in 07-cr-10320-RGS.

defense counsel argued that awarding three points for misdemeanor convictions in Louisiana was unwarranted, neither defense counsel nor the government, referred to the 1987 conviction or any other convictions which did not affect the guideline calculations. (See Tr. 27-29).

In sentencing Savarese, Judge Stearns ruled that "a substantial sentence is warranted, not 18 years, but a 14-year term[.]"  (Tr. at 35).  As the court explained to Savarese:

> I do not believe that you would not go back to crime after being released.  I'm confident that you will even with this sentence. You're a thief; and I don't mean it in an offensive way, but that's been your life, and I just don't see any reason why that's going to change.

(Tr. at 35).  Thus, while Savarese's life of crime may have been a factor in his sentencing, there was no mention of his 1987 conviction.

Savarese appealed to the First Circuit, which affirmed his conviction and sentence in an opinion issued on July 11, 2012.  United States v. Savarese, 686 F.3d 1 (1st Cir. 2012).  He then filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 challenging, among other things, his criminal history calculation.  (See Docket No. 318 in 07-cr-10320-RGS).  Therein he argued that a 1994 conviction out of the State of Louisiana for which he had been charged three points had been vacated post-sentencing on constitutional grounds.  (Ground One).  In denying his § 2255 petition on October 7, 2013, Judge Stearns reviewed the pleadings that Savarese had filed in Louisiana, including a petition for writ of corum nobis, and found that the 1994 convic-

tion had not, in fact, been vacated.  (<u>See</u> Docket No. 330 at 4-5).  Therefore, the three points with which Savarese had been charged for the Louisiana conviction remained.

### The Petition for Writ of Coram Nobis

Savarese filed the instant petition for writ of coram nobis on May 7, 2013, while his § 2255 petition was pending.  Therein he contends that his 1987 plea violated his Fifth, Sixth and Fourteenth Amendment due process rights as it was involuntary and without an understanding of the consequences of the plea.  (Docket No. 1 at 1).  He also asserts that he received ineffective assistance of counsel in connection with the § 2255 petition that he had filed in his 1987 case.  (<u>Id.</u>).  Savarese alleged in his petition:

> <u>It is now only after reviewing his pre-sentence report in his current [2010] federal proceeding that he is realizing that the conviction was not vacated</u>.  This resulting [sic] in an illegal conviction and sentence to stand.  The Petitioner is now suffering collateral consequences due to this conviction <u>because it is being considered a prior offense in his pre-sentence report</u> and among many other consequences that go along with a federal conviction.  When the Petitioner was released in 1989 in such a manner he had no reason to believe the conviction was intact.  Therefore, there was never any reason for the Petitioner to challenge the Constitutional defects <u>again</u> in the taking of the plea until 2010.

(Pet. at 4-5) (first and second emphasis added).

The Government opposed the Petition, pointing out that the fact that the 1987 conviction had not been vacated was evident in Saverese's 2003 PSR, and that the 1987 conviction was not considered in calculating his criminal history in 2010.  (Opp. at 4-5).  Savarese responded by arguing that even if he had known in 2003 that his 1987 conviction had not been vacated, there was no reason for him to challenge it at that time

because his mandatory guidelines would have been the same.  (Resp. at 3-4).  With

respect to the fact that the 1987 conviction did not count in his criminal history, Savarese

argued as follows:

> Even though no criminal points were awarded for this conviction it
> still influenced the sentence imposed in the Petitioners sentence.
> The prosecutor at the time of sentencing highlighted this past
> criminal conviction.  Also in the Pre-Sentence Report the
> Government submitted with their answer the probation officer also
> highlighted this conviction as prior similar conduct.  It is for these
> reasons this conviction cannot be just another line in the Petitioners
> [sic] criminal history as the Government asserts in their answer.
> That is very significant and therefore must be considered a
> continuing collateral consequence.  The awarding of criminal history
> point or lack thereof is not alone a reason to deny this Petition for
> lack of continuing Collateral Consequences.

(Resp. at 2) (emphasis added).  Finally, Savarese argued that he did not challenge the

description of his 1987 conviction in the 2010 PSR until 2012 because he was waiting

until his conviction was final.  (See Pet. at 5-6).

Additional facts will be provided below where appropriate.

## III.  ANALYSIS

### Standard of Review

Coram nobis is an "extraordinary" remedy, and "successful petitions for coram

nobis are hen's-teeth rare."  United States v. George, 676 F.3d 249, 253, 254 (1st Cir.

2012).  A writ of coram nobis is an ancient writ, originally intended to enable courts "to

correct technical errors in a final judgment previously rendered."  Id. at 253 (citing

United States v. Denedo, 556 U.S. 904, 910-11, 129 S. Ct. 2213, 2220, 173 L. Ed. 2d

1235 (2009)).  "Its present, limited use in the American legal system is to correct

'fundamental errors of fact or law.'"  <u>Murray v. United States</u>, 704 F.3d 23, 28 (1st Cir.

2013) (quoting <u>United States v. George</u>, 676 F.3d at 253).

The First Circuit applies a tripartite test in evaluating whether the writ should be

granted.  As the Court of Appeals recently explained:

> This circuit has adopted a three-part test to determine whether a
> petitioner is eligible for coram nobis relief, along with a fourth part
> that addresses whether relief should actually be granted.  To
> establish eligibility, the petitioner must first adequately explain his
> failure to seek relief earlier through other means; second, he must
> show that he continues to suffer a significant collateral consequence
> from the judgment being challenged and that issuance of the writ
> will eliminate this consequence; and third, he must demonstrate that
> the judgment resulted from a fundamental error.  The petitioner bears
> the burden of persuasion on all three steps.

<u>Id.</u> at 29 (footnote and internal citations omitted).  As the Court continued:

> Even if the petitioner meets all three of the conditions in the coram
> nobis eligibility test, the court retains discretion to grant or deny the
> writ, depending on the facts and circumstances of the individual
> case.  Satisfying the three-part test is a necessary, but not a
> sufficient, condition for the issuance of the writ.

<u>Id.</u> at 29-30 (footnote and internal quotations and citations omitted).

In the instant case, Savarese has not adequately explained his delay in pursuing the

writ and, even more importantly, has not established that he continues to suffer

significant collateral consequences as a result of the 1987 conviction.  Therefore, the writ

must be denied.[6]  See Barreto-Barreto v. United States, 551 F.3d 95, 103 (1st Cir. 2008)

(where "petitioners fail to meet the first requirement of the coram nobis standard," court

does not reach the other requirements).

### Timeliness

Based on the instant record, it cannot be disputed that by the time of his 2003

PSR, Savarese knew that official records reported that he had been released on parole

from his 1987 conviction.  The records did not support his contention that the conviction

had been vacated due to his habeas petition.  While he raised this objection to his 2003

PSR, the Kentucky Probation Department did not agree that the conviction had been

vacated and continued to attribute three points to that conviction.  Nevertheless, Savarese

did not pursue the matter further.  His lack of diligence in pursuing his claim bars his

present request for extraordinary relief.  See United States v. Brimage, 2012 WL

5398471, at *4, and cases cited.

Savarese cites to United States v. Kwan, 407 F.3d 1005 (9th Cir. 2005), for the

proposition that "[t]he law does not require [him] to challenge his conviction at the

---

[6] Since Savarese has not met two of the three criteria, this court will not address whether
the judgment in his 1987 conviction "resulted from an error of the most fundamental character."
See United States v. George, 676 F.3d at 254.  This court does note, however, that the
determination whether a court's failure to inform a defendant "that the defendant will not be
permitted to withdraw his plea if the court does not follow the government's recommendation or
the defendant's request for a particular sentence" as required by Fed. Rule Crim. P. 11 "can be
harmless error."  United States v. McCarthy, 97 F.3d 1562, 1575 (8th Cir. 1996).  See also
United States v. McDonald, 121 F.3d 7, 11 (1st Cir. 1997) ("even an error implicating Rule 11's
core concerns will not require vacating a guilty plea if the error, in context, is harmless.").
Accord United States v. Castro-Gomez, 233 F.3d 684, 687 (1st Cir. 2000).

earliest opportunity, it only requires [him] to have sound reasons for not doing so." Id. at 1014.  In Kwan, the defendant was being deported on the grounds of having been convicted of an aggravated felony.  Counsel advised him that there was little chance of the conviction causing him to be deported, as a result of which Kwan focused his energies on challenging his deportation.  When those efforts were unsuccessful and the conviction was, in fact, determined to be a cause of his deportation, Kwan brought a writ of coram nobis.  Id. at 1013-14.  The court held that "[a]lthough it may have been more prudent of Kwan to collaterally attack his conviction earlier, his course of action was reasonable."  Id. at 1014.  The same conclusion cannot be reached here.

Assuming, arguendo, that Savarese did not learn that the 1987 conviction had not been dismissed until 2003,[7] it is not reasonable for him to have waited until 2012 to bring his petition for the extraordinary writ.  Savarese contends that it would not have affected his mandatory sentence in 2003 to dismiss the 1987 conviction.  (See Resp. at 3-4). However, he was charged with three points in his criminal history calculation in 2003 due to the 1987 conviction.  Therefore, the 1987 conviction was of some import, regardless whether it changed his mandatory sentence.  If, as Savarese now contends, the 1987 conviction should have been dismissed, he should have brought that claim by no later than 2003.  He has not given a reasonable explanation as to why he waited an addition

---

[7]  This court notes that until the government referred to the 2003 PSR in its Opposition to Savarese's Petition, Savarese took the position that he did not learn of his release on parole until 2010.  (Pet. at 4-6).  He addressed the possibility that he knew about it in 2003 in his Response. (Resp. at 3).

nine years.  See Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993) (writ of coram nobis denied where petitioner "has neither explained why he did not purse a timely appeal nor shown significant, continuing collateral consequences flowing from his conviction.").

### Absence of Collateral Consequences

Savarese's Petition should be denied for the additional reason that he has not shown that he continues to suffer significant collateral consequences from the judgment. It is undisputed that the 1987 conviction did not affect his criminal history calculation under the Sentencing Guidelines.  Savarese's contention that the conviction was emphasized either in his 2010 PSR or during his sentencing by Judge Stearns is defeated by the record.  It is listed as one of many convictions in the PSR, and was not mentioned at all during sentencing.  The evidence presented to Judge Stearns during the trial from witnesses, separate and apart from his criminal history, was that Savarese had been engaged in fraudulent credit card schemes for about 20 years.  (See Tr. at 6).  Moreover, even if his criminal history is considered, it is replete with convictions for similar crimes even without the 1987 conviction.  There is no support for Savarese's contention that he continues to suffer any collateral consequences from the 1987 judgment, much less significant consequences.  He has not established that he is entitled to the extraordinary remedy of coram nobis.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Petition for Writ of Coram Nobis (Docket No. 1) be DENIED.[8]


          / s / Judith Gail Dein         
Judith Gail Dein
U.S. Magistrate Judge

---

[8]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).